Mark W. JOHNSON,
Petitioner, Appellant,

v.

SOO LINE RAILROAD
COMPANY, Respondent.

No. C8–90–359.

Supreme Court of Minnesota.

Dec. 28, 1990.

Don C. Aldrich, Gregory T. Yaeger, Yaeger & Yaeger, P.A., Minneapolis, for petitioner, appellant.

Megan K. Micke, Katherine T. Cavanor, Spence, Micke & Thurmer, P.A., St. Paul, for respondent.

SIMONETT, Justice.

This case involves plaintiff's attempt to change the party defendant after the statute of limitations has run. The court of appeals held the change was not allowable under the relation-back provision of Minn. R.Civ.P. 15.03. We agree and affirm.

The period of limitation for plaintiff-appellant Mark W. Johnson's action under the Federal Employers' Liability Act (a 3–year period) expired July 19, 1989. On July 14 plaintiff timely commenced his suit, naming Chicago and Northwestern Transportation Company as defendant. Suit was commenced by delivering the summons and complaint to the sheriff for service. Under Minn.R.Civ.P. 3.01(c), the sheriff had 60 days to serve the papers.[1]

On July 20, the day after the statute of limitations had expired, plaintiff discovered he had sued the wrong defendant and that he should have sued Soo Line Railroad Company. Plaintiff took two remedial steps. First, that same day he prepared a new summons and complaint naming the Soo Line as the defendant and personally served it on the Soo Line. It is conceded this effort was ineffective. Second, a day later on July 21, plaintiff prepared an amended summons and complaint naming the Soo Line as defendant and delivered it to the sheriff who had not yet served the original suit papers. Five days after the statute of limitations had run, on July 24, the sheriff served both the original suit papers and the amended summons and complaint on the Soo Line. The original suit papers were never served on Chicago and Northwestern Transportation Company.

Plaintiff contends his amended complaint against the Soo Line should relate back to July 14, the date the original action was commenced. The trial court agreed and denied defendant Soo Line's motion for summary judgment. After the trial court refused to certify the question as important and doubtful, the Soo Line petitioned for discretionary review under Minn.R.Civ. App.P. 103. The court of appeals granted the petition, ruled plaintiff's suit was time barred, and reversed the trial court. *Johnson v. Soo Line R.R. Co.*, 454 N.W.2d 468 (Minn.App.1990). We granted plaintiff Johnson's petition for further review.

There are three parts to plaintiff-appellant's argument: (1) The action was timely commenced on July 14 prior to the expiration of the statute of limitations by delivery of the suit papers to the sheriff; (2) the action was "miscaptioned" because the named defendant, Chicago and Northwestern, was a "misnomer"; and (3) this misnomer may be corrected by amending the original pleadings to name the intended

---

1. Minn.R.Civ.P. 3.01 provides in part:

    A civil action is commenced against each defendant: * * * (c) when the summons is delivered to the sheriff in the county where the defendant resides for service; but such delivery shall be ineffectual unless within 60 days thereafter the summons is actually served on that defendant or the first publication thereof is made.

party defendant, Soo Line Railroad, and this amendment relates back to commencement of the original action.

Before we analyze plaintiff's argument, a brief look at our pertinent law is needed.

## I.

Statutes of limitation eliminate stale claims, grant repose to liability that otherwise would linger on indefinitely, and permit the judicial system to husband its limited resources. To accomplish these policies, there must be a definite time period after which claims are barred. Even so, there are occasions when mistakes will happen that in fairness deserve a relaxation of the time-bar. Thus the common law is well settled that "misnomers" may be corrected nunc pro tunc notwithstanding the correction is made after the statute of limitations has expired. *Nelson v. Glenwood Hills Hospitals, Inc.*, 240 Minn. 505, 62 N.W.2d 73 (1953); *Wise v. Chicago, B. & Q. R.R. Co., Relief Dept.*, 133 Minn. 434, 158 N.W. 711 (1916). The same is true where there is an "identity of interest" between the parties giving the intended defendant either actual or constructive knowledge of the mistake in pleading. *Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865 (Minn.1989).

In 1967, Minn.R.Civ.P. 15.03 was amended to cover those situations where relation-back amendments changing parties will be allowed after the statute of limitations against the new party has expired. Since 1967, Rule 15.03 allows a relation-back amendment where (1) the claim against the intended defendant arises out of the conduct or occurrence alleged in the original pleading; (2) the party to be added has received such notice of the institution of the action that he will not be prejudiced; (3) the intended party knows or should have known the action against the wrong party was a mistake and that the action was meant to be brought against him; and (4) such notice and knowledge was received by the intended defendant "within the period provided by law for commencing the action against him." *See* footnote 2, *infra.*

■ The common law "misnomer" fits comfortably within the confines of Rule 15.03 and fulfills the requirements for relation back amendments. In the typical case, there is a misspelling of the intended defendant's name or a misdescription of the intended defendant; the intended defendant knows or should know the suit papers were meant for him; and the intended defendant knows this at the time the miscaptioned suit papers are served because the person served represents the intended defendant in some capacity. *Nelson v. Glenwood Hills Hospitals, Inc.*, 240 Minn. 505, 62 N.W.2d 73 (1953), and *Lange v. Johnson*, 295 Minn. 320, 204 N.W.2d 205 (1973), are two such misnomer cases.

In *Glenwood Hills* the plaintiff sued Glenwood Hills Hospitals, Incorporated, when the correct defendant was Homewood Hospital, Incorporated. A relation-back amendment to correct the misnomer was allowed. The two hospitals used some of the same staff, exchanged patients, and Homewood had advertised it was "operated in connection with" Glenwood Hills. Some of the same people served as officers in both corporations. Some years earlier a former Homewood Hospital, Incorporated, had changed its name to Glenwood Hills Hospitals, Incorporated, and then a new Homewood Hospital Incorporated, the correct defendant, was created. The correct defendant knew of the misdirected lawsuit when the papers were served. It knew this because the suit papers had been served on an individual who was not only secretary of the board of Glenwood Hills but president of the board of Homewood; plus, Veronica Davidson, who was served as a codefendant, was also the secretary and general administrator of Homewood.

In *Lange v. Johnson*, plaintiff sued Earl Johnson, d.b.a. Lafayette Farm Service, and personal service was made on Earl Johnson. The correct defendant, however, was Lafayette Farm Services, Inc. This court approved an amendment of the pleadings and judgment nunc pro·tunc to name the corporation as a defendant. The error in naming the sole proprietorship was an obvious technical mistake. The correct defendant had both notice and knowledge of

the plaintiff's mistake at the time the action was commenced because, as we pointed out, Earl Johnson had been personally served with the original miscaptioned suit papers, and Johnson was an officer of the intended corporate defendant. Admittedly, a sole proprietorship and a corporation are two separate entities but, in a pleading context, mistaking one for the other may be seen as a technical and remedial deficiency.

An "identity of interests" between the wrong defendant and the intended defendant will also meet Rule 15.03 relation-back requirements. This typically occurs when two corporations share such an intimacy in their business operations and organization that service on one imputes notice to the other. Recently, in *Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865, 871 (Minn. 1984), we held the relationship between a parent corporation and its subsidiary created a sufficient identity of interests so that service on the parent permitted a relation-back amendment to name the subsidiary.

In the case now before us, the intended defendant, not the "wrong" defendant, was served with the miscaptioned summons and complaint after the limitation period had expired but within the grace period allowed by Rule 3.01(c) for the sheriff to make service of suit papers timely delivered to him. We now turn to an analysis of the case at hand.

## II.

If (as is true in this case) the claim against the intended defendant arises out of the conduct or occurrence alleged in the original complaint, Rule 15.03 then adds two further requirements. First, the intended defendant must receive notice of the institution of the action and knowledge that but for a mistake in identity, the action would have been brought against him. Second, this notice and knowledge must be received "within the period provided by law for commencing the action." [2]

■ First of all, this is not an "identity of interests" case. The Chicago and Northwestern Transportation Company and the Soo Line Railroad Company are not in any way related. There is no corporate parent-subsidiary relationship, no special successor in interest connection. The two corporations are entirely separate entities and they share no intimacy in their operations or organizational make-up by which service on one imputes notice to the other. Neither are there any confusing facts or circumstances about the two corporate entities that might reasonably mislead the plaintiff to name the wrong defendant.

Plaintiff's position seems to be that this is a "misnomer" case. He contends that a fair reading of his original complaint tells the Soo Line that it was really the intended defendant. The complaint refers to an accident that happened at the "Pig's Eye Hump Yard" on July 14, 1986 and, says plaintiff, the Soo Line not only owns this yard, but it knew about the accident to plaintiff Johnson when it happened. Consequently, argues plaintiff, the Soo Line should have known when it read the complaint that a mistake had been made and that the suit papers were meant for it, not the Chicago and Northwestern.

■ Assuming the Soo Line would have or should have recognized the pleading mistake when it received and read the original pleadings, the fact remains that the Soo Line did not receive the pleadings until 5 days after the statute of limitations had run. Plaintiff points out that the Soo Line

**2.** Minn.R.Civ.P. 15.03 reads:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against that party.

received the suit papers within the 60–day "grace period" granted by Minn.R.Civ.P. 3.01(c); it argues, therefore, that the Soo Line knew it was the intended defendant "within the period provided by law for commencing the action," as required by Rule 15.03.

There are two problems with this argument. First, the action to be commenced by delivery of the suit papers to the sheriff on July 14 was an action against the Chicago and Northwestern Transportation Company, not the Soo Line, and commencement of this action was never made effective. Second, even assuming an action against the Chicago and Northwestern had been commenced, notice of the pleading mistake therein to the Chicago and Northwestern would not have been notice to the Soo Line.

In the typical "misnomer" situation, service of the miscaptioned pleading is on the wrong defendant, but this service, even so, imparts to the intended defendant the information that the suit was meant for it. That did not happen here.[3] The Chicago and Northwestern Transportation Company was never served with any suit papers by the sheriff, not even during the grace period. The original pleadings never invoked the court's jurisdiction over the Chicago and Northwestern, and, consequently, there was no pending court action to which an amendment could relate back. But even if the Chicago and Northwestern had been served with the suit papers, that would not have been notice to the Soo Line, there being no identity of interests between the two corporations nor a person served wearing an officer's hat in both corporations.

■ Plaintiff misconceives the role played by Rule 3.01(c). This rule plainly says the action is *commenced* when the summons is *delivered* to the sheriff of the proper county for service, not when the sheriff subsequently serves the papers. *See* footnote 1, *supra.* Subsequent service of timely delivered suit papers within the 60–day grace period is necessary to preserve the effectiveness of the delivery date as the date of commencement of the action. When the sheriff serves timely delivered suit papers during the grace period after the statute of limitations has run, any information of a pleading mistake contained in the suit papers relates back, by virtue of Rule 3.01(c), to the delivery date. The converse, however, is not true; the delivery date, which is the commencement date of the action, is not extended to the date of service. To put it another way, the 60–day grace period is intended to accommodate a busy sheriff, not a tardy plaintiff.[4]

We hold, therefore, that the phrase "within the period allowed by law for commencing the action" in Rule 15.03 refers to the period allowed by the applicable statute of limitations, and it does not include the grace period of Rule 3.01(c).

To sum up, (1) the action to which an amendment changing the party defendant might relate was never commenced in this case; (2) even if it had been, notice and knowledge of the pleading mistake to the wrong defendant named therein would not have been notice and knowledge to the

---

3. If the Chicago and Northwestern had been *served* before the statute of limitations had expired and Chicago and Northwestern had then told Soo Line about the instituted lawsuit *also before* the statute of limitations had expired, it could be argued that a relation-back amendment should lie under Rule 15.03. But this is not what happened either.

True, the Soo Line had knowledge of the accident giving rise to a possible claim by plaintiff which had occurred some 3 years earlier, but this, of course, is not notice and knowledge that plaintiff is now suing on that claim. *Hafferman v. Westinghouse Elec. Corp.,* 653 F.Supp. 423, 427 (D.D.C.1986); *Francis v. Pan American Trinidad Oil Co.,* 392 F.Supp. 1252, 1258–59 (D.Del.1975).

4. Strictly speaking, the 60–day grace period does not "toll" the statute of limitations because the limitation period is left intact. For example, nobody claims that the new, separate complaint naming Soo Line as defendant and personally served on the Soo Line on July 20, the day after the statute of limitations expired, was a timely service. Neither was the amended summons and complaint served on the Soo Line on July 24 a timely service.

Rule 3.01 only fixes the event that constitutes commencement of the action; it does not extend or suspend the time to commence the action.

intended defendant, the Soo Line; and, therefore, (3) such notice and knowledge of a pleading mistake that the Soo Line did actually receive when served on July 24 during the grace period for service on the Chicago and Northwestern came too late, not "within the period provided by law for commencing the action against [the Soo Line]."

When timely delivered and correctly captioned pleadings are served by the sheriff after the statute of limitations has run but within the grace period, it is true that the properly named defendant does not actually receive notice and knowledge of the action until after the limitations period has expired. Because this is so, plaintiff argues it is inconsistent to construe Rule 15.03 to say an improperly identified defendant must receive notice and knowledge before the limitations period expires.[5] This argument ignores, as we have seen, the plain wording of Rule 15.03. But equally if not more important, the argument forgets that the kind of pleading mistake which satisfies Rule 15.03 does, in fact, timely bring home to the intended defendant notice and knowledge of the pleading mistake, much the same as if the intended defendant had been properly named. If plaintiff's argument were to be accepted, a plaintiff could pick some person's name out of a hat (anybody would do), designate that person as defendant in the original pleadings, and then take up to 60 days to settle on who of several known candidates should really be the defendant. Statutes of limitation may not be stretched so cavalierly.[6]

■ The United States Supreme Court arrived at a seemingly stricter interpretation of Fed.R.Civ.P. 15(c), which is identical to our rule. In *Schiavone v. Fortune*, 477 U.S. 21, 31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986), the Court held (as we do) that the "period provided by law" refers to the period provided by the applicable statute of limitations, and that this period does not include the grace period given under Fed.R. Civ.P. 4 for service of suit papers after an action is commenced by filing the complaint with the court. The Court further stated, however, that even assuming the original timely filed complaint fulfilled the requirements of Rule 15(c) due to an identity of interest, there was no notice to the intended defendant because it did not actually receive the documents during the limitations period. *Id.* at 29, 106 S.Ct. at 2384. Some commentators fear that this statement in *Schiavone* has seriously restricted the relation-back doctrine; whether or not these fears are justified, we do not see that they apply to our Rule 15.03 as we have explained it in the context of our Rule 3.01(c).[7]

Rule 15.03, as we construe it, recognizes the kinds of mistakes that deserve to escape the statute of limitations, such as the misnomer and the identity of interests mistakes. It is a characteristic of a pleading mistake remediable by a relation-back amendment that the mistake is of such a nature that the intended defendant is advised of that mistake within the limitation period, either in fact or because the action

**5.** Commentators have used the same argument to criticize the United States Supreme Court's interpretation of Fed.R.Civ.P. 15(c) in *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986). Thus: "There is no reasonable basis for a relation back rule that applies different requirements for plaintiffs who serve after the statute has run but state the name of the defendant perfectly and those who make some mistake." Note, *Looking Forward: A Fairer Application of the Relation Back Provision of Federal Rule of Civil Procedure 15(c)*, 63 N.Y.U. L.Rev. 131, 149 (1988). *See also*, Note, *Schiavone v. Fortune: A Clarification of the Relation Back Doctrine*, 36 Cath.U.L.Rev. 499 (1987).

**6.** Our rules provide a procedure whereby a plaintiff who has been unable to learn the iden-

tity of a defendant may file a complaint using any name in the pleadings and so escape the statute of limitations, with the defendant's true name to be added later when discovered. This is the so-called John Doe pleading provided by Minn.R.Civ.P. 9.08. But, as we held in *Leaon v. Washington County*, 397 N.W.2d 867, 870 (Minn. 1986), Rule 9.08 is not intended to give a plaintiff extra time to name a defendant known to the plaintiff.

**7.** When our rules of practice are modeled after the federal rules, federal cases interpreting the federal rule are helpful and instructive but not necessarily controlling on how we will interpret our state counterpart. *See Leer v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 308 N.W.2d 305, 308 (Minn.1981).

was commenced under the provisions of Rule 3.01(c).

Plaintiff suggests *Chan v. Katzenmeyer*, 391 N.W.2d 907 (Minn.App.1986), supports his position. There plaintiff commenced an action by delivering the suit papers to the sheriff 1 day before the statute of limitations expired. The papers named Katzenmeyer as the defendant, but, unfortunately, Katzenmeyer had been dead for some time. After the limitation period had expired, plaintiff caused a special administrator to be appointed for the Katzenmeyer estate and served the suit papers on the personal representative, and the court of appeals allowed a relation-back amendment. This decision is probably best explained as a misnomer case. The court of appeals allowed relation back even though the correct defendant, the personal representative, was not in existence at the time the action was timely commenced against a defendant mistakenly believed to be alive. Under these unique circumstances—no correct defendant to sue and plaintiff unaware of the need for appointment of a successor in interest—the court of appeals chose to impute the notice and knowledge of the lawsuit that a timely appointed representative would have had to the belatedly appointed representative. There is no need for us to agree or disagree with *Chan;* for our purposes here it is enough to say that the Soo Line was very much in existence when plaintiff commenced his action.

Affirmed.